OPINION OF THE COURT — bv tiib
Hon. EDWARD TURNER.
These two cases came up in one-transcript, in pursuance of a petition and fiat for a writ of Error, and are submitted in their wedded state by consent of parties. T hey are, however, separate and distinct cases. The judgment in the case of Singleton is so manifestly erroneous, that *252 his counsel did not attempt to sustain it in argument before this court. Singleton may have been, and may still be entitled to the application of funds in the sheriff’s hands to the satisfaction of his execution against Fuqua, but he adopted an erroneous mode of getting at it. He might have moved the circuit court on a proper shewing for the application of money, in the sheriff’s hands. But he shews no grounds for the motion against the sheriff for judgment against him and his securities. The sheriff made return on his execution, nulla bona, and however false this return may have been, it is not such a return as entitles a plaintiff to this summary made of proceeding — besides, the defendant in error has failed in shewing that he notified the sheriff of the motion, and this is a fact not to be presumed.
The case of S. W. Lewis, is liable to the like objection — the want of ■notice, and of certainty — and the court might stop here and say nothing of the merits of the case. But, as the case involves principles of law which are important, and should be understood, I have looked carefully into it.
On the 18th November 1822, a writ of fi. fa. was issued at the suit of N. Stewart vs. Fuqua, and was received by the sheriff on the same day —he returned thereon, that he had levied on three negroes, viz: Sam, Jeff and- Eebecca, that the defendant gave a forthcoming bond therefor, with security — that the forthcoming bond was returned, forfeited, except as to the slave Rebecca, into the clerk’s office, and an execution taken out immediately for the whole amount, without shewing how the slave Rebecca had been disposed of — that the sheriff received this last execution, being a fi. fa. on 12th February, 1823, levied it on sundry slaves and made the sum of $1768 50, in part of plaintiff’s money — and among the slaves sold for diis money, we find the names of Rebecca and child, which two, sold for $>500.
On the 3d day of January, 1823, Samuel W. Lewis sued out two writs of fi. fa. vs. Fuqua, directed to the same sheriff, who served them the 7th day of the same month, on which he returned, “ levied on a tract of land, &c. and not sold for the want of bidders,” to May Term, 1823.
No further steps appear to have been taken in Lewis’ cases, until November Term, 1828 — when, it appears that the motion was made and *253 judgment entered, on which the present writ of error has been sued out —but in which of the cases or for what sum, does not appear. The transcript of the record shows two executions' of Lewis vs. Fuqua — but the motion for judgment made in November, 1826, does not specify which execution was before the court.
At the May Term, 1823 of Wilkinson Circuit court, N. Stewart mov-' ed “to compel the Sheriff to pay over money made to this Term, out of the property of these defendants, (Fuqua and his security in the forthcoming bond) to the plaintiff N. Stewart,” on which motion, the court decided that the plaintiff’s lien on the property, levied on under the first fi. fa. continued, notwithstanding the forthcoming bond forfeited. On appeal taken to the supreme court, that judgment was reversed, and the contrary rule has prevailed ever since, to wit: that a forthcoming bond forfeited, raises the lien of the first execution on which it is taken, and is a satisfaction of the judgment, until such bond shall be quashed.
What the Sheriff did with the money made on N. Stewart’s execution, does not appear. It would seem by the entries appearing in the transcript before us, that the object of Lewis and of Singleton in the motions they severally made at November Term 1826, was to obtain the application of that money to the payment of their judgments — inasmuch as their writs of fi. fa. issued in January 1823, had the preference over that of Stewart, which issued in February 1823. As it relates to the slave Rebecca, this is probably not the case, as she was delivered to the Sheriff in accordance with the condition of the forthcoming bond — and remained in the Sheriff’s hands bound by Stewart’s execution which issued in November 1822. Of this, however, I have some doubt.
It results from this state of facts, that Lewis’ executions, and that of Singleton should have been satisfied in preference to that of Stewart, out of the goods and effects of Joseph Fuqua, Jr. saving as to the slave Rebecca, and probably her child, (of which child we see or hear nothing until the sheriff made his return onN. Stewart’s execution;) and it may be, that the parties may find suitable remedies for the injuries of which they complain. The summary remedy given by statute against sheriffs and their securities, must be strictly pursued, to entitle plaintiffs to the benefit thereof; and their usual remedies, by other means, are not taken *254 away. The common law remedies are not so summary, but are more certain, and are better calculated to preserve the interests of all parties and are better understood from having been longer in use.
I am therefore of opinion that the judgments in these cases be- reversed.
Judge Black concurs.